IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR798 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| ARTHUR FAYNE, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, by its counsel, Rebecca C. Lutzko, United States Attorney, and Brian McDonough and Vanessa V. Healy, Assistant United States Attorneys, and hereby submits the attached Trial Brief.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Vanessa V. Healy
Brian McDonough (OH: 0072954)
Vanessa V. Healy (OH: 0092212)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3965/3652
(216) 522-2403 (facsimile)
Brian.McDonough@usdoj.gov
Vanessa.Healy@usdoj.gov

I.      **OVERVIEW OF THE CASE**

In this case, Defendant Arthur Fayne is charged with nine counts of wire fraud. Defendant owned Business Development Concepts, LLC ("BDC") an Ohio company and oversaw construction projects and the purchase of equipment, supplies, and inventory for the projects. Northeast Ohio Neighborhood Health Services, Inc. ("NEON") was an Ohio nonprofit corporation that operated as a federally qualified health center network of community health centers and provided primary care medical services for adults and children in the Cleveland, Ohio area. Community Integrated Services, Inc. ("CIS") was the for-profit Ohio subsidiary company of NEON. The East Side Market was a project sponsored by NEON to redevelop a vacant building into a grocery store and community center in the Glenville neighborhood. The Albert M. Higley Company ("AM Higley") was an Ohio company and the general contractor for the East Side Market project.  Crescent Digital was an Ohio company that installed audio-visual technology equipment at the East Side Market. Defendant defrauded NEON and CIS by diverting $759,105.92 in payments owed to AM Higley and $125,923.86 in payments owed to Crescent Digital, to BDC for his own use, which included gambling at the JACK Cleveland Casino and making personal expenditures.

II.     **CONTROLLING LAW**

    A.      Title 18, United States Code, Section 1343, Wire Fraud

        1.      Statutory Language

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

    2.  Elements

      (a)  First, that the defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive another of money or property, that is to defraud Nonprofit 1 and Company 1, and Nonprofit 1 and Subcontractor 1, to obtain money and property by means of false and fraudulent pretenses, representations, and promises;

      (b)  Second, that the scheme included a material misrepresentation or concealment of a material fact;

      (c)  Third, that the defendant had the intent to defraud; and

      (d)  Fourth, that the defendant caused another to use wire, radio or television communications in interstate commerce in furtherance of the scheme.

**III.** **THE COURT SHOULD PERMIT THE UNITED STATES TO HAVE TWO CASE AGENTS REMAIN IN THE COURTROOM DURING TRIAL**

  The United States moves this Court to permit two case agents, one special agent and one task force officer with the Federal Bureau of Investigation ("FBI") (referred to together as "the Agents") to remain in the courtroom during trial. While the United States anticipates that the Court will enter a witness separation order in this case pursuant to Fed. R. Evid. 615, the United States requests that the Court permit the Agents to remain in the courtroom to assist the government at counsel table. Additionally, the United States anticipates only calling Special Agent Shaun Roth to testify, not Task Force Officer Bob Heiss.

  Fed. R. Evid. 615(b) specifically excludes from sequestration "an officer or employee of a party that is not a natural person, after being designated the party's representative by its attorney." The United States anticipates designating the Agents as government representatives present at counsel table.

  Federal Rule of Evidence 615(c) provides an additional exception to the court's sequestration order for witnesses "whose presence is shown by a party to be essential to the

3

presentation of the party's cause." *See United States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991) (referencing former Rule 615(3)). The rule, therefore, allows the prosecution to designate representatives in addition to the case agent for certain prosecutions that are sufficiently complex so that "the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'" *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993). "The 'essential' witness exception set out in Rule 615(3) 'contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation.'" *Id*. at 1073 (quoting Advisory Committee Notes to Fed. R. Evid. 615).

The presence of the Agents in court is essential. The Agents have served as key parts of the investigative team assigned to this matter and have become conversant in the evidence. The Agents will prepare, organize and familiarize themselves with the exhibits in this case related to the schemes their respective agencies investigated. Their presence will streamline the presentation of evidence in this matter. Accordingly, the government submits that the Agents are essential witnesses pursuant to Rule 615(c) who both should be permitted to sit at the government's table for the entirety of the trial.

**IV. THE COURT SHOULD PROHIBIT THE DEFENDANTS FROM PRESENTING EVIDENCE OR ARGUMENT RELATED TO ANY IRRELEVANT DEFENSES.**

Based on the facts of this case as well as discussions with counsel, the United States foresees several types of irrelevant defenses that Defendant may try to raise or suggest:

(1) Arguing that Defendant engaged in other "good acts";

(2) Arguing that AM Higley ultimately received the money it was owed; and

(3) Arguing that expense reimbursements were properly submitted on three grants related to the development of the East Side Market.

4

These defenses would be irrelevant, and the Court should preclude Defendant from presenting any argument or evidence related to them.

### A. DEFENDANT'S EVIDENCE AND DEFENSES MUST BE RELEVANT

"The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). Federal Rule of Evidence 402 provides that only relevant evidence is admissible at trial. Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." The Supreme Court explained, "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (citing ADVISORY COMM. NOTES ON FED. R. EVID. 401). In analyzing the relevance of a piece of evidence, courts consider (1) whether the evidence tends to prove the proposition it is offered to prove and (2) whether that matter is "of consequence to the determination of the action." *United States v. Waldrip*, 981 F.2d 799, 806-07 (5th Cir. 1993).

Relevant evidence, however, is not always admissible. Rule 403 of the Federal Rules of Evidence gives the Court discretion to exclude evidence, even if relevant, "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A trial court's determinations as to the admissibility or relevance of evidence "depend on the exercise of sound judgment within the context of the entire trial." *United States v. Bilderbeck*, 163 F.3d 97, 978 (6th Cir. 1999) (trial court's ruling *in limine* to limit cross-examination about

5

cooperator's likely prison term not an abuse of discretion where it appeared such testimony would be used to compare to defendant's own likely term of incarceration) (citing *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 2991)).

Citing these rules, the Sixth Circuit has repeatedly upheld the exclusion of irrelevant defenses. *See e.g., United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995) (upholding limitation on cross examination of government witness regarding past manipulation of government agents in an unrelated matter); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 2994) (upholding trial court's decision to exclude defense evidence that the government investigation was sloppy); and *United States v. Poindexter*, 942 F.2d 354, 362 (6th Cir. 1991) (trial court's exclusion of self-defense evidence upheld in prosecution for carrying a weapon during commission of a drug trafficking crime); *see also United States v. McElroy*, 910 F.2d 1016, 1024-25 (2d Cir. 1990) (upholding district court's exclusion of defense that the victim, a bank, was not injured in bank fraud prosecution); *United States v. Fierros*, 692 F.2d 1291, 1294 (9th Cir. 1982) (upholding district court's exclusion of evidence that defendant knew his actions violated the statute).

### B. SPECIFIC IRRELEVANT DEFENSES THAT MAY BE RAISED IN THIS TRIAL

#### i. Arguing that Defendant engaged in other "good acts"

Defendant may seek to argue that he engaged in various good acts during the course of the fraud scheme, or that this scheme resulted in a net public benefit. This type of evidence is inadmissible, and the Court should prohibit Defendant from introducing it.

##### a. "Good acts" are generally inadmissible at trial

Prior good acts are not a defense to criminal charges, "[f]or the same reason that prior 'bad acts' may not be used to show predisposition to commit crimes . . . ." *United States v.*

*Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (holding that the district court correctly precluded defendant, a public official charged with accepting bribes, from offering evidence "that on several occasions he helped constituents without asking for . . . or receiving anything of value"). *See also United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) (holding that a defendant's good acts are irrelevant to their defense because "[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable").

Rules 404 and 405 of the Federal Rules of Evidence reinforce this general ban on "good acts." Rule 404(a) prohibits introducing "evidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." And on the rare occasions where character evidence is admissible, Rule 405(a) provides that character evidence may be proven only "by testimony about the person's reputation or by testimony in the form of an opinion." Evidence of specific "good acts" would essentially provide defendant with a backdoor way of violating Rule 405(a), by proving character through specific instances of past conduct. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (holding that district court erred when it allowed defendant charged with accepting bribes from meat plants to introduce testimony from individuals at meat plants who did not pay bribes to the defendant).

      b. Specific "good acts" evidence that Defendant may seek to use at trial

The government believes that Defendant may attempt to introduce various acts for the benefit of the community that he has done related to other group and projects he has been involved in over the years.

Whether or not this is true, it would be completely irrelevant to the issues at trial. It would also be a backdoor for proving Defendant's good character by using specific instances of past conduct, which is flatly prohibited by Federal Rule of Evidence 405(a). *See Gov't of the Virgin Islands v. Grant*, 775 F.2d 508, 511-12 (3d Cir. 1985) (holding that Rule 405(a) does not make an exception for accused persons seeking to prove their good character by specific acts).

Therefore, the Court should prohibit Defendant from offering evidence about any "good acts" Defendant has committed.

> c. While the United States maintains that there is no relevant "good act" evidence that Defendant should be permitted to introduce, Defendant should be required to give notice of any such acts now

The Court should require Defendant to provide advance notice of any "good acts" evidence he intends to offer at trial, and if he fails to do so, prohibit him from referencing any "good acts" in his opening statement or elsewhere during this trial. Although there is no specific rule requiring criminal defendants to provide advance notice of specific "good acts" evidence, it would be proper in this case for the Court to require Defendant to disclose any such evidence or argument in advance to provide the United States with an opportunity to object. *See United States v. Shields*, 783 F. Supp. 1094 (N.D. Ill. 1991) (requiring defendants to provide the prosecution with advance notice of any "good acts" evidence). Absent such notice, the Court should prohibit Defendant from referring to any specific "good acts" in their opening statements. *Cf. United States v. Kemp*, 362 F. Supp. 2d 591 (E.D. Penn. 2005) (defense counsel referred to inadmissible evidence in their opening statement without seeking pretrial ruling, and then argued that the mere fact the evidence had been mentioned in opening statement was reason enough to admit it at trial).

8

To avoid surprise, lengthy bench conferences, and the risk of exposing the jury to inadmissible evidence, the Court should require Defendant to give advance notice of any "good acts" evidence he intends to offer at trial.

   ii. This Court should preclude evidence regarding post-fraud curative acts and suits

Defendant is alleged in the Indictment to have participated in two wire fraud schemes from June 23, 2016 until March 31, 2018. (R. 1: Indictment, PageID 1-7). Specifically, the United States alleges that Defendant defrauded NEON and CIS by diverting $759,105.92 in payments owed to AM Higley to BDC for his own use. After completing the East Side Market project and not receiving full payment for its work, AM Higley filed and settled a civil suit against NEON. The United States believes that Defendant may seek to introduce evidence regarding the civil suit, as a result of which, AM Higley ultimately received what it was owed for the ESM project after the fraud occurred.

This subject should be excluded under Rules 402 and 403. It is undisputed that AM Higley was owed money for the construction of the ESM and ultimately paid that money. But the civil mechanism AM Higley was forced to use to recover that payment after Defendant's fraud is not an issue properly before the jury.

Rather, the question is whether *Defendant* committed fraud *during* the time period charged in the Indictment. Indeed, "subsequent investigations, repayments, or settlement attempts shed no light on whether a defendant had a previous intent to defraud." *United States v. Carter*, 483 F. App'x 70, 75 (6th Cir. 2012) (upholding exclusion of testimony from counsel for defendant's corporation regarding attempts to investigate and remedy apparent fraud; subsequent attempts to rectify the fraud were irrelevant to defendant's earlier intent or state of mind). "Thus, [the Sixth Circuit] generally 'curtails admission of evidence of post-accusation repayment.'"

9

*United States v. Snyder*, 789 Fed. App'x 501, 508-09 (6th Cir. 2019), quoting *United States v. White*, 846 F.3d 170, 178 (6th Cir. 2017) ("[t]hree other circuits join the Sixth Circuit in curtailing admission of evidence of post-accusation repayment"). Evidence of NEON's subsequent payment or litigation stemming from Defendants' fraud is irrelevant and would only serve to mislead the jury and confuse actual relevant issues. It should accordingly be excluded. Fed. R. Evid. 402 and 403.

        iii.    This Court should exclude defense expert Timothy D. Mayles' report and testimony as irrelevant

On August 15, 2023, defense counsel provided the government with an expert report from Timothy D. Mayles, Director of Barnes Wendlings CPAs LLC. Approximately two months later, defense counsel provided Mr. Mayles' CV. The report, dated August 14, 2023 concludes: "Based upon our computations and review of support, nothing came to our attention to draw the conclusion the expense reimbursements totaling $2,117,000.00 on the three grants related to the development of the East Side Market project were not properly submitted for reimbursement nor were they inappropriate or not in accordance with the grant documents." This conclusion in no way speaks to the allegations in the indictment. Defendant has been charged with 9 counts of wire fraud based upon 2 separate schemes. The first scheme involved Defendant creating and submitting falsified invoices to CIS and NEON for money owed to AM Higley, which CIS and NEON would pay, and Defendant would keep for himself. The second scheme involved Defendant requesting subcontractor Crescent Digital transfer money into his wife's bank account, and then spending that money himself, instead of holding it until Crescent had completed its work for ESM. The government acknowledges that the ESM project applied for and received certain grants and funding from the State of Ohio, the City of Cleveland, and Cuyahoga County, but that funding has nothing to do with the allegations in the indictment. The

United States has not alleged that any expense reimbursements related to the East Side Market project were submitted inappropriately or not in accordance with the grant documents, thus, Mr. Mayles' expert report is wholly irrelevant. Further, his report and testimony would only serve to mislead and confuse the jury by bringing in evidence of other funding sources that are not at issue in the case. It should accordingly be excluded. Fed. R. Evid. 402 and 403.

## V. DEFENDANT'S STATEMENTS

The United States intends to offer out-of-court statements made by the Defendant, including invoices, emails, and other statements by Defendant to others. These statements will be admissible under one or more of the following theories: (1) the statements are non-hearsay; (2) the statements were made by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2); or (3) the statements are subject to another specific hearsay exception.[1]

### A. NON-HEARSAY STATEMENTS

A large portion of the Defendant's out-of-court statements are not subject to the rule against hearsay because they are not being offered for the truth of the matter asserted. Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995). As such, an out-of-court statement is not hearsay if (1) it does not contain an assertion, *see United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003), or (2) it is not offered to prove the truth of what it asserts, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009).

---

[1] This section is not intended as an exhaustive list of every out-of-court statement that may be introduced by the United States at trial. Rather, this section is intended to outline the legal theories the United States intends to rely on for admitting the statements.

11

Likewise, statements introduced to prove their falsity, rather than the truth of what they assert, do not implicate the rule against hearsay or the Confrontation Clause. *See United States v. Porter*, 886 F.3d 562, 566-67 (6th Cir. 2018). Statements that consist solely of questions or commands are not hearsay because they do not contain assertions. *See Rodriguez-Lopez*, 565 F.3d at 314. Other statements will be admissible to provide context to related evidence in the case. *See United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) (holding that a non-party's half of a conversation with defendant was not hearsay, because it was admissible as context for the defendant's half).

Finally, many of the Defendant's out-of-court statements are verbal acts that are not subject to the hearsay rule. "A verbal act is an utterance of an operative fact that gives rise to legal consequences." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.11(3) (2012). For verbal acts, "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). Thus, where a statement directs the formation and operation of a conspiracy, illegally solicits someone else to perform an act, or puts forward a bribe, that statement is not barred by the hearsay rules, regardless of the truth or falsity of its assertion. *See United States v. Forfana*, 543 F. App'x 578, 580 (6th Cir. 2013) ("words used to offer a bribe amount to 'verbal acts' with their own legal significance and do not qualify as hearsay").

B. STATEMENTS BY A PARTY OPPONENT

In addition to the exceptions cited above, a defendant's own statements are admissible against him personally under Federal Rule of Evidence 801(d)(2)(A) as statements made by a party opponent. Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1974). Other statements may qualify as adoptive admissions under Rule 801(d)(2)(B) if the defendants

12

"manifested an adoption or belief in the statements' truth." *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006); *United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006) (ruling that emails authored by defendant may be admissible as statements by a party opponent, and emails forwarded by defendant may be admissible as adoptive admissions).

VI. **LIMITATION ON DEFENDANT SEEKING TO ADMIT HIS OWN OUT-OF-COURT STATEMENTS**

Out-of-court statements made by a party-opponent are excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2), but this exception does not apply when the same statements are offered by the party himself. The party-opponent exception reflects the fact that the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This exception does not, however, extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses. *See United States v. Payne*, 437 F.3d 540, 547-48 (6th Cir. 2006). Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause. *See United States v. Ford*, 761 F.3d 641 (6th Cir. 2014).

Therefore, the Government respectfully requests that the Court prohibit Defendant from introducing any of his out-of-court statements at trial through any other witness.

VII. **USE OF LEADING QUESTIONS DURING GOVERNMENT'S DIRECT EXAMINATION OF ADVERSE PARTIES**

Generally, "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). However, "the court should allow leading questions when…a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Here, the government may call as witnesses in its case in chief family members, friends, and colleagues of Defendant. These

13

witnesses may be hostile to the government's case in that they hold allegiances to Defendant. Accordingly, the government should be permitted to use leading questions when examining these witnesses.

### VIII. SUBMITTING THE INDICTMENT TO THE JURY.

The Sixth Circuit has held that the trial judge has the discretion to submit the Indictment to the Jury in a criminal case so long as limiting instructions are given to the effect that the Indictment is not to be considered as evidence of the guilt of the accused. *United States v. Cooper*, 577 F.2d 1079, 1089 (6th Cir. 1978) ("It was not error for the trial judge to have permitted the jury to have a written copy of the indictment, especially where, as here, the jury was fully instructed that it could not consider the indictment as evidence of the crime itself.") *Accord United States v. Russo*, 480 F.2d 1228, 1244 (6th Cir. 1973) ("The court did not commit error in permitting the jury to have the indictment during its deliberation since an instruction was given that the indictment is not evidence of guilt and only contains a statement of the charges.").

In the 2019 edition of the Sixth Circuit Pattern Jury Instructions (Criminal), the Sixth Circuit Committee on Pattern Jury Instructions specifically addressed the issue of submitting the Indictment to the jury, either by reading it to the jury or by providing a copy to the jury during their deliberations:

> Reading the indictment to the jury is generally within the discretion of the district court. *United States v. Smith*, 419 F.3d 521, 530 (6th Cir. 2005), citing *United States v. Maselli*, 534 F.2d 1197, 1202 (6th Cir. 1976). Instructions stating that "the purpose of an indictment is only to cause the person named therein to be brought to trial and to advise him of the nature of the charge or charges against him" have been characterized as "desirable" and "customary." *United States v. Baker*, 418 F.2d 851, 853 (6th Cir. 1969). Earlier versions of this commentary did not recommend that the trial judge read the indictment to the jury, and also recommended that the trial judge not paraphrase the indictment. The Committee recognizes that district court practices on reading or summarizing the indictment vary widely, and takes no

> position on the best practice. **However, jury confusion can arise, particularly in complex cases, if the indictment is not read, accurately summarized or sent to the jury room**. *See, e.g., United States v. Bustamante*, 1992 WL 126630, 1992 U.S. App LEXIS 13407 (6th Cir. 1992) (unpublished). As the Eighth Circuit states in Note 2 to its Model Criminal Instruction 1.01 (2003 ed.), **"Depending on the length and complexity of the indictment and the individual practices of each district judge, the indictment may be read, summarized by the court, summarized by the prosecution or not read or summarized depending on what is necessary to assist the jury in understanding the issues before it."** If the indictment is furnished in writing to the jury, a limiting instruction such as Instruction 1.03(1) must be given. *United States v. Smith*, 419 F.3d 521, 531 (6th Cir. 2005) (omission of limiting instruction was error but not plain error). The Committee takes no position on the practice in some districts of providing the jury with a copy of the indictment.
>
> Reading the indictment to prospective jurors is not an abuse of instructions are given to the effect that the indictment is not to be considered as evidence of guilt. *United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008) Such a limiting instruction is found in Instruction 1.03(1).

Committee Commentary 2.02, Sixth Circuit Pattern Jury Instruction – Criminal (2019) (emphasis added).

The Government respectfully requests that the Court submit the Indictment to the jury during deliberations, or alternatively, that the Court read the relevant sections of the Indictment to the jury when providing them the jury instructions. In either case, the Court should issue a limiting instruction that the Indictment is not evidence of the Defendant's guilt.

## IX. <u>ADMISSIBILITY OF SUMMARY EXHIBITS</u>

In accordance with established practice in the Sixth Circuit and other circuits, the Government intends to use in its case-in-chief summary charts detailing and organizing the Government's evidence, in conjunction with the testimony of certain government witnesses. *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998); *United States v. Scales,* 594 F.2d 558 (6th Cir.), *cert. denied*, 441 U.S. 946 (1979). So long as the summary charts are properly

authenticated and the contents of both the charts and the summary witness's testimony are limited to evidence which is admissible or has been admitted, the use of such charts and witnesses will contribute to an orderly and informed trial and will not prejudice the rights of the Defendant.

The use of summary exhibits is permitted by Fed. R. Evid. 1006:

> The contents of voluminous writings, recordings, or photographs may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

In *Scales*, a leading case on the use of summary charts which has been followed in courts across the country, the Sixth Circuit discussed Rule 1006:

> There is no requirement in Rule 1006, however, that it be literally impossible to examine the underlying records before a summary or chart may be utilized. All that is required for the rule to apply is that the underlying "writings" be "voluminous" and that in-court examination not be convenient.

*Id.* at 562. In *Scales*, the court approved the government's use of a series of large summary charts introduced through the testimony of a special agent. The first chart summarized all the charges contained in the indictment, and each of the remaining charts summarized a count or an overt act, or both, by reproducing or making reference to some of the documentary proof already in evidence. The court specifically approved the use of a special agent, who was not an expert witness, to present the charts. Because the agent had properly catalogued the exhibits previously admitted into evidence, had knowledge of the analysis of records referred to in the charts, and had supervised the compilation of the charts, the court held that the agent was the proper person to attest to their authenticity and accuracy.

Other circuits have cited *Scales* as authority for upholding the admissibility of summary

charts and summary testimony, where such summaries assisted the jury in organizing the proof and understanding the charges against the defendant. In *United States v. Lemire*, 720 F.2d 1327, 1328 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1226 (1984), the court held that "a non-expert summary witness can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." The D.C. Circuit specifically rejected the defendant's contentions that a special agent was an improper summary witness because he was not an "expert," and that the summary witness provided an unwarranted second closing argument for the government. In *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984), *cert. denied*, 467 U.S. 1227 (1984), the Fifth Circuit relied upon *Scales*, in holding that a special agent is qualified to present summary charts which do not contain complicated calculations requiring the need of an expert witness for accuracy. *See United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (purpose of a summary witness is simply to aid the jury in examination of evidence already admitted).

The Government's proposed use of summary charts and summary witness testimony in this case will, consistent with the above-cited authority, assist the jury as finder of fact in organizing the proof and understanding the charges against Defendant. The summary charts, and the testimony of the summary witnesses concerning the charts, will be limited to evidence which is admissible or has been admitted and has been made available to the defense for examination and copying.

## X. FRYE HEARING

The government requests this Court under *Missouri v. Frye*, 566 U.S. 134 (2012), to make a specific record, before trial, of whether defense counsel has communicated to Defendant, and whether Defendant has rejected, a pretrial plea offer made by the United States. In light of

*Frye*, such a record is necessary to preclude the possibility of a later claim that Defendant was not informed of a government plea offer.

The *Frye* court recognized the need to protect against post-conviction litigation and identified "some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences." *Id*. at 1408-09. One such measure which the Court specifically approved is that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id*. at 1409. Such a proceeding would not involve the Court in plea negotiations in violation of Rule 11(c), as the Court would not attempt to influence either the content of the plea offer or whether defendant accepted or rejected it. This Court's role would simply be to make a specific record of what plea offer the government made, whether defense counsel communicated that offer to the defendant and whether the Defendants accepted or rejected the plea offer.

The government requests the Court to conduct a colloquy on the record with the parties to ascertain whether Defendant has rejected the plea offer in favor of exercising his Sixth Amendment right to a jury trial.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Vanessa V. Healy
 Brian McDonough (OH: 0072954)
Vanessa V. Healy (OH: 0092212)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113

18

(216) 622-3965/3652
(216) 522-2403 (facsimile)
Brian.McDonough@usdoj.gov
Vanessa.Healy@usdoj.gov